# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**NORMAN M. HAMMER, ET AL.**          *CIVIL ACTION NO. 6:16-1048

**VERSUS**                                              *JUDGE DOHERTY

**PHI, INC., ET AL.**                               *MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Pending before the undersigned is the Motion to Remand this suit to the 15th Judicial District Court for Vermilion Parish, Louisiana filed by Norman M. Hammer, David A. Loupe, Norris L. Webb and Carol Guidry Webb  (collectively "the plaintiffs").  [rec. doc. 24].  Bell Helicopter Textron, Inc. ("Bell") and PHI, Inc. ("PHI") have filed Opposition. [rec. docs. 31 and 32].  Plaintiffs have filed a Reply. [rec. doc. 38].  Oral argument on the Motion was held on September 27, 2016 and the matter was taken under advisement. Post-hearing briefs from both sides were accepted. [rec. docs. 46, 48].

For the following reasons, **IT IS RECOMMENDED** that the plaintiffs' Motion to Remand be **DENIED**.

## BACKGROUND

In their Petition, the plaintiffs allege that on June 8, 2015, Messrs. Hammer, Loupe and Webb were passengers in a Bell 407 helicopter, owned and operated by PHI. The pilot, Andrew Ford, who is an employee of PHI is also a named

defendant.  The plaintiffs allege that while in flight over the Gulf of Mexico within three miles of the coast of Vermillion Parish, the helicopter began to shake and spin violently, Ford "lost control of the aircraft" and the helicopter "violently crashed" in the marsh near Fresh Water City in Vermilion Parish instead of reaching its intended destination, an airport in Louisiana. [rec. doc. 1-3 at ¶ II and III].  As a result, they claim to have suffered personal injuries.  [*Id*. at ¶ IX].

At the time of the crash, plaintiffs allege that PHI, Ford and the Bell helicopter were engaged in a traditional maritime activity, "traveling over the high seas from land in Louisiana to and from offshore platforms."  [*Id.* at ¶ VI]. Accordingly, plaintiffs allege that they are entitled to maintain this action under the General Maritime Law in state court pursuant to the Savings to Suitor's Clause, 28 U.S.C. § 1333. [*Id.*].  However, the plaintiffs also allege that the helicopter was being operated out of a hanger and support facility in Louisiana where it was maintained and repaired, that the flight started in Louisiana and ended at the crash site on land in Vermillion Parish and that the contract of carriage was confected in Louisiana [*Id.* at ¶ III]. In their motion, plaintiffs set forth that "the primary fault and negligence asserted - negligent inspection and maintenance causing a defective helicopter to crash . . . ALL occurred on Louisiana land." [rec. doc. 24-1, p. 7] (emphasis in original). Thus, even though the defendants asserted the general maritime law as a basis for removal,  the assertion of general maritime law as a

basis for jurisdiction is meritless since there is no maritime situs - a fundamental precept to the exercise of maritime jurisdiction, nor is there any connection with traditional maritime activity given these land-based platform workers were ultimately injured on land.   *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

The defendants allege in their notice of removal that the helicopter was flying inbound from a fixed platform located in Vermilion Block 256-E on the Outer Continental Shelf ("OCS") in the Gulf of Mexico, offshore of Vermillion Parish. [rec. doc. 1-1, ¶ I, III].  The passengers were all employees of a natural gas services company known as Kinetica Partners, LLC ("Kinetica"), which operated jurisdictional gas meters for natural gas pipeline facilities throughout the Gulf of Mexico on the OCS. [rec. doc. 32, p. 7, 32-3].  The operation and maintenance of jurisdictional natural gas pipelines is regulated under 49 C.F.R. 192 which specifically includes pipeline facilities and transportation of gas on the OCS. [rec. doc. 32, p. 11-12].

Kinetica entered into a Agreement for Flight Services (AFS) with PHI to render flight services and transport Kinetica personnel and equipment to the various landing sites - including landing sites on the OCS. [rec. doc. 32, p. 1, 32-1]. At the time of the crash, the Kinetica employees were being transported from

3

the location where their work was being performed on the OCS. [rec. doc. 32, p. 11-12]. In their Petition, plaintiffs allege that they were "offshore workers" who were intended to be carried by the helicopter. [rec. doc. 1-3 ¶ VII(b)]. In their motion, the plaintiffs state the "were oilfield workers, and would not have been on a helicopter but for their jobs." [rec. doc. 24-1].

Plaintiffs allege that they were injured through the negligence and fault of PHI and Ford by operating a defective, inadequately maintained and inspected helicopter, failing to protect plaintiffs from an unreasonably dangerous condition of the helicopter, failing to perform adequate inspections and repairs to the helicopter before carrying plaintiffs, performing improper, shoddy and defective repairs to the helicopter tail rotor blades approximately three (3) weeks prior to the incident" and "failure to operate and land the helicopter in a reasonably safe manner. . . ." [*Id.* at ¶ VII].

They allege Bell is liable for the alleged unreasonably dangerous condition of the helicopter for its reasonably anticipated use, because the helicopter was unreasonably dangerous in construction and composition, unreasonably dangerous in design, unreasonably dangerous because it did not conform to an express warranty and unreasonably dangerous because adequate warnings had not been provided. [*Id.* at ¶ VIII]. These conclusory allegations were the subject of a

4

motion to dismiss. [rec. doc. 10]. The plaintiffs have been given leave to amend the complaint to provide factual allegations as to Bell's fault and  the motion was withdrawn reserving to Bell the right to re-urge. [rec. doc. 40].

 Bell and PHI removed the action alleging original jurisdiction under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331-1356. Alternatively, the defendants assert federal question jurisdiction under 28 U.S.C. § 1331 because the plaintiffs' claims require the resolution of substantial questions of federal law, namely, the field of aviation safety including questions of in-air operational negligence which are pre-empted under federal law, and original jurisdiction under 28 U.S.C. § 1333 and § 1441 over plaintiffs' putative general maritime law claims.   [rec. doc. 1-1].  Plaintiffs contend that federal jurisdiction under OCSLA is not present because the situs requirement for the exercise of such jurisdiction is lacking.  They additionally contend that federal question jurisdiction under 28 U.S.C. § 1331 is not present because the field of aviation safety is not completely preempted by federal law.

## LAW AND ANALYSIS

"Federal courts are courts of limited jurisdiction.  We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins.*

*Co.,* 243 F.3d 912, 916 (5ᵗʰ Cir. 2001); *Hussey v. Total Environmental Solutions, Inc.,* 2015 WL 7282073, *2 (W.D. La. 2015).

>    The removal statute for non-diversity cases provides in pertinent part:

>    any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

>    28 U.S.C. § 1441(a).

Therefore, the removing defendants have the burden to establish whether or not this court has original jurisdiction over this case.

While the plaintiffs do not invoke OCSLA, it is well-settled that 'because jurisdiction is invested in the district courts by [the OCSLA jurisdictional] statute '[a] plaintiff does not need to expressly invoke OCSLA in order for it to apply.'" *In re Deepwater Horizon,* 745 F.3d 157, 163 (5ᵗʰ Cir. 2014), *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208, 213 (5ᵗʰ Cir. 2013). The jurisdictional statute provides federal district courts with jurisdiction over " cases and controversies arising out of, or in connection with . . .  any operation conducted on the outer Continental Shelf which involves exploration, development or production of the minerals, of the subsoil and seabed of the outer Continental Shelf . . ." 43 U.S.C. §1349(b)(1).  "OCSLA asserts exclusive federal question jurisdiction over the

OCS by specifically extending '[t]he Constitution and laws and civil and political jurisdiction of the United States ... [to the OCS] and all installations and other devices permanently or temporarily attached to the seabed . . . for the purpose of exploring for, developing, or producing resources therefrom.'" *Barker*, 713 F.3d at 213 *citing* 43 U.S.C. §§ 1332(1), 1333(a)(1), 1349(b)(1) and *Recar v. CNG Producing Co.*, 853 F.2d 367, 370 (5th Cir. 1988).

The Fifth Circuit has repeatedly emphasized the broad grant of OCSLA jurisdiction as "'covering a wide range of activity occurring beyond the territorial waters of the states.'" *Id. quoting Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir.2006) *amended on reh'g*, 453 F.3d 652 (5th Cir. 2006); *In re Deepwater Horizon*, 745 F.3d at 163 *citing Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996) and *EP Operating Ltd. v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).

In *Deepwater Horizon,* the most recent Fifth Circuit case where the court was called upon to determine if OCSLA jurisdiction was present, the court applied a "but-for" two-pronged test asking whether: (1) **the activities that caused the injury** constituted an "operation" "conducted on the outer Continental Shelf" that involved the exploration and production of minerals, and (2) the case "arises out of, or in connection with" the operation. *Deepwater Horizon*, 745 F.3d at 163

*citing EP Operating Ltd.,* 26 F.3d at 568-569. (Emphasis added). The court specifically rejected a situs requirement for OCSLA jurisdiction under §1349 stating "[b]ecause federal jurisdiction exists for cases 'arising out of, or in connection with' OCS operations, . . . the statute precludes an artificial limit based on situs. . ." *Id.,* at 164.

The Court added that the plaintiffs were improperly intertwining the OCSLA § 1349 two-part jurisdictional inquiry, which does not contain a situs requirement, with OCSLA's choice of law provision, 43 U.S.C. § 1333(a)(2), which employs a three-part inquiry and contains a situs requirement, "because the provisions and the issues they raise are distinct." *Id*., 745 F.3d at 164. In so doing, the court expressly found that the plaintiffs erroneously relied on *Golden v. Omni Energy Servs. Corp.*, 242 Fed.Appx. 965, 967 (5th Cir. 2007) in support of their situs argument stating *Golden* "is not precedential because the case was unpublished. . . . " *Id*. Thus, any "contrary implication" in *Golden* was not considered.

In the motion before the Court the plaintiffs also relied on *Golden* and *Barker* in their briefing to contend there is a situs requirement. and understandably so. In *Barker,* decided before *Deepwater Horizon*, the court stated the following in the context of discussing OCSLA jurisdiction:

8

> To determine whether a cause of action arises under OCSLA, the
> Fifth Circuit applies a but-for test asking whether: (1) the facts
> underlying the complaint occurred **on** the proper situs; (2) the
> plaintiff's employment furthered mineral development on the OCS;
> and (3) the plaintiff's injury would not have occurred but for his
> employment." (Emphasis added)

*Barker,* 713 F.3d at 213 *citing Recar,* 853 F.2d at 369.

At oral argument, the plaintiffs focused their argument on the first prong of

the *Deepwater Horizon* inquiry contending that the "activities that caused the

injury" had to do with maintenance, repair, inspection, design, etc. of the

helicopter and none of those activities constituted an operation conducted **on** the

OCS. Thus, the focus of their argument not only included a situs consideration,

but a causation element directed solely to the alleged tortious activities of the

**defendants**.

In *Recar*, decided in 1988, the court undertook the "sole question" of

OCSLA jurisdiction analysis as it applied to the foreman of a maintenance crew

engaged in painting and repairing production platforms. Section 1331(m) defined

production to include maintenance, and therefore, the court narrowed the question

to whether the plaintiff's injury "that occurred while he was overseeing the repair

and maintenance of the platform, arises out of the production of minerals on the

[OCS]." In finding original federal question jurisdiction, the court relied on an

even earlier decision with facts similar to those in this case as its authority:

> We have established a 'but for' test to resolve this question. In *Barger*
> *v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5ᵗʰ Cir. 1982), we

9

considered whether a helicopter pilot killed on the [OCS] while
ferrying employees to production platforms was covered by the
OCSLA. In answering this question in the affirmative we stated:
'Barger likewise would not have been killed in a helicopter crash in
the Gulf of Mexico 'but for' the fact that he was employed to
transport eleven workers to a fixed platform on the Shelf. His work
furthered mineral exploration and development activities and was in
the regular course of activities.'"

*Recar v. CNG Producing,* 853 F.2d at 369.

In *Stokes v. Petroleum Helicopters, Inc.*, 1997 WL 695557 *2 (E.D. La.

1997), Judge Vance of the Eastern District specifically found that PHI, the same

defendant as in this case, was associated with operations conducted on the shelf

because it "ferried passengers to and from an offshore oil production platform - an

OCSLA enclave."

Therefore, the actions of PHI, and more particularly the pilot, engaged in

ferrying passengers to and from offshore platforms on the OCS, can and has been

considered to be an operation conducted on the OCS that furthers mineral

exploration and development activities.

Also citing *Recar,* just as in *Barker*, the district court assigned to this case

stated in *Simms v. Roclan Energy Services, Inc.,* 137 F. Supp.2d 731, 734 (W.D.

La. 2001) "[a]" a plaintiff's claims arise under OCSLA if (1) the plaintiff's

employment furthered mineral development on the Outer Continental Shelf, and

(2) plaintiff's injury would not have occurred  'but for' his employment."

OCSLA defines production to mean "those activities which take place after

the successful completion of any means for the removal of minerals, including . . .

operation monitoring." 43 U.S.C. §1331(m). It is without question that the

activities of the plaintiffs in working with gas monitoring meters furthered mineral

"production" on the OCS and it is without question that their injuries would not

have occurred "but for" their employment since the crash occurred while they

were being transported from their worksite on the OCS.  Therefore, applying

*Recar* in this manner*,* jurisdiction would seem to exist. However, this Court is not

privy to the allegations of fault against PHI in the two cases cited (*Barger* and

*Stokes*) and it is clear that all of the accidents in these cited cases did occur on the

OCS.

   Since it is well-settled that a panel of the circuit can only overrule a prior

panel if such "overruling is unequivocally directed by controlling Supreme Court

precedent,"[1] the question is whether the more recent decisions of *Barker* and

*Deepwater Horizon* have somehow changed the law to create a situs requirement,

or whether the activities that caused the injury must be conducted on the shelf, or

whether these cases  can be reconciled with prior Fifth Circuit precedent.

   Juxtaposed to this analysis the Court must consider the impact of the

Supreme Court decision of *Pacific Operators Offshore LP v. Valladolid,* ----U.S.--

---

[1]*Martin v. Medtronic*, 254 F.3d 573, 577 (5th Cir. 2001) quoting *U.S. v. Zuniga-Salinas*, 945 F.2d 1302, 1306 (5th Cir. 1991).

----, 132 S.Ct.680 (2012).[2]  At issue in that case was whether the scope of 43

U.S.C. § 1333(b), which extends coverage under the LHWCA for "death or

disability **as the result of operations conducted on** the outer Continental Shelf",

required that the injury occur on the OCS.  In rejecting a "but-for" test espoused

by the Third Circuit, and a "situs of injury" test espoused by the Fifth Circuit, the

Court offered the following which is particularly relevant here:

> Section 1333(b) states only two requirements: The extractive
> operations must be 'conducted on the outer Continental Shelf,' and
> the employee's injury must occur 'as a result of those' operations. . .
> Pacific also argues that, because all of § 1333(b)'s neighboring
> subsections contain specific situs limitations, we should infer that
> Congress intended to include a situs-of-injury requirement in §
> 1333(b). . . . But our usual practice is to make the opposite inference.
> *Russello v. U.S.* 464 U.S. 16, 23 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)
> ('Where Congress includes particular language in one section of a
> statute but omits it in another section of the same Act, it is generally
> presumed that Congress acts intentionally and purposely in the
> disparate inclusion or exclusion'. . . Congress' decision to specify in
> scrupulous detail, exactly where the other subsections of § 1333
> apply, but to include no similar restriction on injuries in § 1333(b),
> convinces us that Congress did not intend § 1333(b) to apply to
> injuries suffered on the OCS. Rather, § 1333(b) extends LHWCA
> coverage to any employee injury, regardless of where it happens, as
> long as it occurs 'as a result of operations conducted on the outer
> Continental Shelf.'

*Pacific Operators Offshore LP,* 132 S.Ct. at 688.

Thus, if the court was being asked to analyze whether the plaintiffs were

entitled to LHWCA benefits under § 1333(b), even though the accident occurred

---

[2]The Court is not, as plaintiffs suggest, going to embark on a totally erroneous exercise applying the analysis for coverage under the LHWCA to this case. The Court notes that, in their post-hearing brief,  plaintiffs did not grasp the significance of the first question posed at oral argument given the language used by the Supreme Court.

off the OCS, the court would inquire whether their injuries occurred "as a result of

operations conducted on the outer Continental Shelf," and in so doing, the court

would be required to apply the substantial nexus test set forth in *Pacific Operators*

rather than a but-for test. More importantly, there would be no situs of injury

consideration.

After *Pacific Operators* was published, whether situs was required under

Section 1349(b)(1) was raised in connection with the securities aspect of the

Deepwater Horizon spill. In rejecting that contention and citing *Pacific*

*Operators,* Judge Ellison of the Texas Southern District reasoned as this Court

does here:

> Plaintiff's argument ignores or minimizes the actual language of
> section 1349(b)(1), which does not contain a situs requirement. The
> fact that section 1333 contains situs requirements only underscores
> that, if Congress meant for section 1349(b)(1) to contain a situs
> requirement, it knew how to include it. *See Villadolid* 132 S.Ct. at
> 688 ."

*In re BP P.L.C. Securities Litigation,* 2012 WL 4739673 *5 (S.D. Tx. 2012).

Given the plain language of the statute, the guidance of the Court in *Pacific*

*Operators*, and consistent with *Deepwater Horizon*, this Court concludes there is

no situs requirement in determining jurisdiction under § 1349(b). To the extent

*Barker* suggests to the contrary, this Court is not so persuaded. Next, the Court

turns to whether the activities of the defendant that caused the accident must be

an "operation" conducted on the OCS.

In *Tennessee Gas Pipeline,* cited *supra,* a tow allided with a platform. The court recognized its definition of "operation" was jurisprudentially defined to include "the doing of some physical act."[3] Rather than looking at the activities of the tug, whose pilot was reading a novel when the tow struck the platform, the court stated " Tennessee Gas has alleged that its platform was affixed to the OCS and was used to extract and transport minerals from the OCS. This was clearly enough physical activity on the OCS to constitute an operation."[4] In analyzing the issue now before this Court as raised by the plaintiffs, citing *Recar,* the court stated:

> But did the accident "arise out of, or in connection with" Tennessee Gas's operation on the OCS? In *Recar v. CNG Producing Co.*, we applied a "but for" test under § 1349 to resolve whether a dispute "arises out of, or in connection with" an operation, thus granting the federal courts subject matter jurisdiction. . .
> In our case it is clear there would have been no accident but for Tennessee Gas's operation on the OCS. Tennessee Gas argues that the dispute "arose out of" a navigational error, and not an operation on the OCS. But there would have been no navigational error but for the existence of the platform and Tennessee Gas's extractive activities. Tennessee Gas also argues that the platform itself did nothing to cause the accident, so that the controversy is not connected with any physical act constituting an operation. This contention is meritless. The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS. Jurisdiction therefore exists under OCSLA.

_____

[3]*Tennessee Gas,* 87 F.3d at 154 quoting *Amoco Production Co. v. Sea Robin Pipeline*, 844 F.2d 1202, 1207 (5th Cir. 1988).

[4]*Id.*

14

*Tennessee Gas,* 87 F.3d at 155.

In *EP Operating Limited Partnership v. Placid Oil,* cited *supra,* the court addressed jurisdiction in the context of a partition suit for an inactive platform. Citing *Amoco Production v. Sea Robin Pipeline,* the court recognized that "operation" was to be read so broadly as to even include "the cessation of physical acts undertaken on the OCS." [5] *Id.,* at 567. Turning to the language of "arising out of or in connection with," the court stated:

> This phrase is undeniably broad in scope. . . . [T]his broad reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA. . . . This body of substantive law identified in section 1333 was intended 'to govern the full range of potential legal problems that might arise in connection with operations on the [OCS]' . . . Thus, the OCSLA casts a broad substantive net in section 1333. Further we find that the most consistent reading of the statute instructs that the jurisdictional grant of section 1349 should be read co-extensively with the substantive reach of section 1333.

*Ep Operating Ltd Partnership,* 26 F.3d at 569 (Internal citations ommitted)

This language confirms that "the reach of section 1349(b) is at least as extensive as section 1333. But it did not resolve the question of whether section 1349(b)(1) might reach further than section 1333." *In re BP p.l.c. Securities Litigation at 5.*

Contrary to the position offered by the plaintiffs, the statute provides

_____

[5] *Amoco Production,* 844 F.2d at 1207.

exclusive federal question jurisdiction in "cases and controversies arising out of, or in connection with . . . **any operation conducted on** the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf." There is no indication of Congressional intent that the "operation" be restricted to the activities of the tortfeasor that caused the accident. Rather, the case or controversy must only arise out of or in connection with **"any operation** conducted on the OCS which involves exploration or production of the minerals . . ."

Whether one looks to the activities of the plaintiffs or PHI, this case arises out of the transportation of platform workers in connection with what is undisputably an operation conducted on the OCS. Applying a but for test as *Recar* and its progeny require, there is no valid argument that the case does not "arise out of or in connection with" "an operation" conducted on the OCS.  Given that *Deepwater Horizon* specifically cited *Recar* and *Tennessee Gas* as examples of cases where jurisdiction existed, the Court rejects the argument that the alleged land-based negligence must be the "operation" utilized to determine jurisdiction. Accordingly, the Court concludes that this case falls within the jurisdictional grant of OCSLA.

## CONCLUSION

Based on the foregoing, the removing defendants have carried their burden of establishing that original federal jurisdiction exists in this case under OCSLA and that removal was proper.  Further discussion of whether the aviation rules are so preemptive as to create federal question jurisdiction is pretermitted. Accordingly, **IT IS RECOMMENDED** that the plaintiff's Motion to Remand be **DENIED.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile*

*Association,* 79 F.3d 1415 (5th Cir. 1996).

Signed this 14th   day of October, 2016, at Lafayette, Louisiana.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**

18