# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

NORMAN M HAMMER ET AL   CASE NO.  6:16-CV-01048

VERSUS        MAGISTRATE JUDGE HANNA

P H I INC ET AL       BY CONSENT OF THE PARTIES

## MEMORANDUM RULING

Before the Court is the Motion for Summary filed on behalf of Plaintiffs, Norman Hammer, David Loupe, Norris Webb, and Carol Webb in which they seek to dismiss the Complaint of Intervention filed by Zurich American Insurance Company. (Rec. Doc. 133; 157[1]). Zurich opposed the Motion. (Rec. Doc. 152), and Plaintiffs replied (Rec. Doc. 158). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, Plaintiffs' Motion is DENIED.

## Factual Background

Plaintiffs filed this suit following a helicopter crash in June 2015. At the time of the accident, Plaintiffs (with the exception of Norris Webb's spouse, Carol Webb)

---

[1] Plaintiffs' Amended Motion for Summary (Rec. Doc. 157) is the same as their original Motion for Summary Judgment (Rec. Doc. 133) with the addition of Allianz Global Risks US Insurance Co., which was recently named as a defendant to Zurich's intervention. (Rec. Doc. 137).

were employed by Kinetica Partners, LLC and were being transported aboard the helicopter from Stone Energy Platform 165 to Kinetica Partners in Pecan Island. (Rec. Doc. 152-1, ¶6-8). Kinetica maintained workers compensation insurance through Zurich. (Rec. Doc. 149-5; 152-1, ¶4).

Plaintiffs filed this suit against the owner of the helicopter, PHI Inc., the helicopter manufacturer, Bell Helicopter Textron, Inc., and the pilot, Andrew Ford. (Rec. Doc. 1-3, at 2). Bell removed to this Court (Rec. Doc. 1). Plaintiffs later amended the Complaint to name PHI's insurer, Allianz Global Risks US Insurance Company, as an additional defendant. (Rec. Doc. 117; 122). Zurich filed a Petition in Intervention in state court to recover its workers compensation benefits paid to or on behalf of Plaintiffs employed by Kinetica pursuant to the Longshore and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. 901 *et. seq.* (Rec. Doc. 1-3, at 20).[2] Plaintiffs now move to dismiss Zurich's Intervention on the grounds that Kinetica, and thus Zurich, contractually waived its rights of subrogation.

The contract at the heart of this dispute is the Agreement for Flight Service (AFS) between PHI and Kinetica. (Rec. Doc. 133-5).[3] In the AFS, PHI and Kinetica

---

[2]     Zurich later amended its Intervention to add Defendant-in-intervention, Allianz (Rec. Doc. 137). Aeronautical Rotor Blades, Inc. has also been named a defendant at times; however, this entity was Bell, incorrectly named. (Rec. Doc. 88). Carol Webb, who is not a covered employee under the LHWCA, is not subject to a subrogation claim at this point as Zurich has not paid any benefits to her or on her behalf.

[3]     At the time of the incident, Kinetica had also contracted with Stone Energy Offshore, LLC in a Gas Gathering Agreement (GGA). (Rec. Doc. 149-4). Stone Energy is not a party to

agreed to modified reciprocal defense, indemnity, and waivers of subrogation. (Rec. Doc. 133-5, pp. 6-9). Zurich's worker's compensation policy contains a "Waiver of Our Right to Recover from Others Endorsement" which states:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> Schedule
>
> ALL PERSONS AND/OR ORGANIZATIONS THAT ARE REQUIRED BY WRITTEN CONTRACT OR AGREEMENT WITH THE INSURED, EXECUTED PRIOR TO THE ACCIDENT OR LOSS, THAT WAIVER OF SUBROGATION BE PROVIDED UNDER THIS POLICY FOR WORK PERFORMED BY YOU FOR THAT PERSON AND/OR ORGANIZATION

(Rec. Doc. 133-5, p. 31).

None of the parties have asserted cross-claims against any other party or otherwise asserted any rights to defense or indemnity that are contained in the record. Nor has the Court been apprised of any pending demands for defense or indemnity.

---

this lawsuit, and the Court is not aware of Zurich having made any claims against Stone Energy. As such, the Court finds the GGA is irrelevant.

# Applicable Law

## I.      Legal Standard for Motions for Summary Judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir.2009); *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir.2000). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citing *Anderson,* 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir.2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Washburn v. Harvey*, 504 F.3d at 508. All facts and inferences are construed in

the light most favorable to the nonmoving party. *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir.2008) (citing *Celotex*, 477 U.S. at 325). The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir.2005).

## II.     Jurisdiction and Choice of Law

This Court has already determined that jurisdiction exists by virtue of the Outer Continental Shelf Lands Act (OCSLA) (43 U.S.C. §1349(b)). (Rec. Doc. 49; *Hammer v. PHI, Inc.*, No. CV 6:16-1048, 2016 WL 7029354, at *7 (W.D. La. Oct. 14, 2016), *report and recommendation adopted*, No. CV 6:16-1048, 2016 WL 7031774 (W.D. La. Dec. 1, 2016)). The Court has not yet addressed the separate inquiry of choice of law. In the context of a helicopter crash in the Gulf of Mexico, the Fifth Circuit succinctly explained whether OCSLA, and thus the law of Louisiana as the adjacent state's law, or maritime law applies, as follows:

> OCSLA extends the laws and jurisdiction of the United States to the seabed and artificial islands on the outer Continental Shelf, including

5

offshore platforms. 43 U.S.C. § 1333(a)(1). The laws of the adjacent state also apply, to the extent they are not inconsistent with federal law. *Id.* § 1333(a)(2)(A). The state adjacent to the W&T platform involved in the helicopter accident is Louisiana, so Louisiana law would apply if OCSLA governs the contract…Therefore, the dispositive issue is whether OCSLA applies, as opposed to maritime law.

We use a three-part test to determine whether OCSLA applies:

(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artific[i]al structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

*Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 283 (5th Cir.2009) (citations omitted).

Unlike the jurisdictional inquiry, the choice of law determination demands a situs analysis. (See this Court's discussion in *Hammer*, at *3, citing *In re Deepwater Horizon*, 745 F.3d 157, 164 (5th Cir.2014)). The situs of the controversy in a tort suit is the place where the tort occurs; however, the "controversy [in a contractual dispute] arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784, 787 (5th Cir.2009).

The disputed issue in this instance is the indemnity and waiver of subrogation provisions in the AFS between Kinetica and PHI. The object of the AFS is to "render flight services to transport personnel and equipment of [Kinetica]…between landing sites within and without the territorial limits of the United States and offshore thereof[.]" (Rec. Doc. 133-5, p. 3). The parties do not dispute, and the Court finds,

that the situs invoked by the AFS includes landing sites on fixed platforms where the assets of Tennessee Gas Pipeline, the entity acquired by Kinetica as set forth in the AFS, would be located. (Rec. Doc. 133-5, p. 1). This was in fact the case here when the PHI helicopter picked up Plaintiffs on a platform located on the OCS to bring them onshore. Thus, the situs requirement of OCSLA is satisfied. See *Alleman, supra*, decided the same year as *Grand Isle Shipyard,* addressing the indemnity provisions in an agreement for helicopter flight services and finding the OCSLA situs test satisfied.

The Court must next determine whether maritime law applies of its own force. When the issue is contractual, as it is in this instance, the Court must determine whether the contract is maritime (in which case maritime law would apply of its own force) or non-maritime (in which case OCSLA would permit application of state law). In *In re Doiron*, the Fifth Circuit adopted the following test for determining whether a contract for the performance of specialty services to facilitate drilling and production of oil or gas on navigable waters is maritime:

> First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters? Second, if the answer to [this] question is "yes," does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract? If so, the contract is maritime in nature.

> *In re Doiron* 879 F.3d 568, 576 (5th Cir.2018).

Although the AFS may facilitate the drilling or production of oil and gas on navigable waters by ferrying workers to and from the production platform, the Court does not find that a "vessel" would play a substantial role in the completion of the contract. The AFS contemplated flight services for Kinetica personnel and equipment. See also *Alleman v. Omni Energy Servs. Corp.,* 580 F.3d 280, 285 (5th Cir.2009), wherein the Fifth Circuit held that an agreement for helicopter flight services was not a maritime contract, such that federal maritime law did not apply of its own force, and OCSLA and the Louisiana Oilfield Anti-Indemnity Act (LOAIA), by virtue of OCSLA, applied. Thus, the Court finds that the AFS between Kinetica and PHI is a non-maritime contract and Louisiana law applies. However, unlike *Alleman,* this finding does not necessarily implicate the applicability of LOAIA to the issue before the Court, specifically, whether the waiver of subrogation is enforceable against Zurich.

### III.    <u>Applicability of LOAIA and Zurich's Subrogation Rights.</u>

The LOAIA "was designed to alleviate the inequity 'foisted upon certain contractors by agreements which purported to grant indemnification to the oil companies for their own negligence or strict liability.'" *Hudson v. Forest Oil Corp.,* 372 F.3d 742, 744 (5th Cir.2004), citing *Fontenot v. Chevron U.S.A. Inc*., 676 So.2d 557, 562 (La.1996); La. R.S. 9:2780(A).  The LOAIA provides in pertinent part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which

8

occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

*    *    *

G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C [which defines applicable agreements]… which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection **which would frustrate or circumvent the prohibitions of this Section, shall be null and void and of no force and effect**. (emphasis added).

"Courts employ a two-part test to see whether the LOAIA generally applies to an agreement's provisions: (1) whether the agreement pertains to an oil, gas, or water well; and (2) whether the agreement relates to the exploration, development, production, or transportation of oil, gas, or water." *Hudson*, 372 F.3d at 745. Neither party has challenged the conclusion that the AFS satisfies these two requirements, and the Court does not need to reach a conclusion either way, as this Court finds the prohibitions of the LOAIA are not implicated in the context of this case for multiple reasons.[4]

---

[4]    See *Allman*, *supra*, finding that it was undisputed the LOAIA applied to an agreement for helicopter flight services to transport workers between the platform and onshore.

The Plaintiffs correctly argue that in *Hudson v. Forest Oil*, relying upon the Louisiana Supreme Court's opinion in *Fontenot v. Chevron*, the Fifth Circuit held that "voiding a waiver of subrogation clause only achieves the purpose of [LOAIA] when such a clause is sought to be enforced in conjunction with the enforcement of an indemnification clause." *Id.*, at 747, citing *Fontenot*, 676 So.2d at 565. In other words, when the parties have not sought indemnity, waiver of subrogation clauses do not violate LOAIA and are enforceable.

No parties have sought to enforce the indemnity provisions at issue in the AFS. Therefore, according to *Hudson* and *Fontenot*, the waiver of subrogation provisions would not violate LOAIA in that context, and Zurich would be precluded from recovering any amounts paid to or on behalf of Plaintiffs from Defendants. Zurich does not dispute the validity of the waiver of the subrogation under LOAIA as set forth in *Hudson/Fontenot*. Rather, in opposition to Plaintiffs' Motion, "Zurich asserts that the waiver of subrogation does not apply to the facts of this case." (Rec. Doc. 152, p. 11, fn. 17). This Court agrees.

**A. <u>Waiver of subrogation as an affirmative defense.</u>**

Zurich's first argument is procedural. Zurich contends that Plaintiffs should not be permitted to raise the waiver of subrogation as a defense to Zurich's intervention, because Plaintiffs did not raise the issue as an affirmative defense in their answer. Zurich cited only an 11th Circuit opinion in support of its position that

affirmative defenses first brought in a motion for summary judgement, rather than in responsive pleadings, are waived.[5]

The Court must first determine whether the waiver of subrogation constitutes an affirmative defense under state law. See *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999). See further *Petrobras Am. Inc. v. Vicinay Cadenas, S.A.,* No. 18-20532, 2019 WL 2521661, at *3 (5th Cir. 2019) (unpublished) ("Nothing in the text of OCSLA indicates that the applicable law for defenses should be analyzed separately from the applicable law for a claim.") Under Louisiana law, an affirmative defense "raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action." *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 398 (5th Cir.2014). Thus, a waiver of subrogation is an affirmative defense. *Westchester Surplus Lines Ins. Co. v. Pacorini Metals, USA, L.L.C.,* 13-288 (La. App. 5 Cir. 12/19/13), 131 So. 3d 445, 449; *SJB Grp., LLC v. TBE Grp., Inc.,* No. CIV.A. 12-181-SDD, 2013 WL 6194571, at *4 (M.D. La. Nov. 26, 2013). Whether a party has waived an affirmative defense is governed by F.R.C.P. Rule 8. The Fifth Circuit explained as follows:

> F.R.C.P. Rule 8 states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed.R.Civ.P. (8)(c)(1). Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case. A defendant

---

[5]     See *Nguyen v. Biondo*, No. 12-13776, 2013 BL 37404, at *4 (11th Cir.2013).

must plead with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced."

***

"[A] technical failure to comply precisely with Rule 8(c) is not fatal." A defendant does not waive a defense if it was raised at a "pragmatically sufficient time" and did not prejudice the plaintiff in its ability to respond. A district court has discretion to determine whether the party against whom the defense was raised suffered prejudice or unfair surprise as a result of the delay.

*LSREF2 Baron, L.L.C.,* 751 F.3d at 398 (citations omitted).

In Answer to Zurich's Intervention, Plaintiffs did not assert any defenses. (Rec. Doc. 108; 110). However, PHI's Answer to Zurich's Intervention specifically pled "as an affirmative defense the provisions, terms, and conditions of [the AFS] including…waiver of subrogation provisions[.]" (Rec. Doc. 8, p. 4, Fifth Defense). Therefore, the Court finds that Zurich was on notice of the waiver of subrogation defense as early July 2016 (when PHI answered the suit), and it thus has not suffered from any prejudice or unfair surprise. Plaintiffs' Motion for Summary Judgment is not barred by their failure to plead waiver of subrogation as an affirmative defense.

## B. Whether Kinetica's waiver of subrogation obligations included claims based on PHI's negligence.

Zurich contends that the AFS did not mandate a "blanket waiver of Kinetica's rights…to seek reimbursement," but, instead, limited Kinetica's waiver obligations to the extent of its indemnity to PHI. (Rec. Doc. 152, pp. 14-15). In other words, Zurich argues that Kinetica was obligated to have its insurer waive its right to subrogation only to the extent that it was obligated to indemnify PHI, and, since the

AFS did not obligate Kinetica to indemnify PHI for its (PHI's) negligence based on the facts of this case, the obligation for Zurich to waive subrogation also does not so extend where Plaintiff claims PHI's negligence caused the accident. This calls for an interpretation of the AFS.

> "Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning." Thus, "[u]nder Louisiana law, where the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence," such that, "[i]f a court finds the contract to be unambiguous, it may construe the intent from the face of the document—without considering extrinsic evidence—and enter judgment as a matter of law." Further, " '[u]nder Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction.'" Put another way, "under Louisiana law, 'when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent,' " and "[t]his established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties."

> *In re Liljeberg Enterprises, Inc.,* 304 F.3d 410, 439–40 (5th Cir.2002) (citations omitted.).

> The AFS provides in pertinent part in Section VII. D.:

> To the extent of Company's [Kinetica's] indemnity of PHI Group (as defined in Section IX(B) below, hereunder, with respect to liability coverages obtained by Company, PHI Group shall be named as an additional assured. *To the extent of its indemnity to PHI Group*, if any, for covered matters hereunder, Company shall also obtain a waiver of subrogation under such policies in favor of PHI Group, including

13

worker's compensation and Employer's Liability policy. (Emphasis added).

(Rec. Doc. 133-5, p. 7).

Under Section IX. B. of the AFS, Company (Kinetica) is obligated to indemnify PHI in certain instances involving claims by its employees, such as Plaintiffs herein, "where the Claim arises out of, is connected with, incident to, or resulting from or relating to the performance of this Agreement." However, that indemnity obligation is specifically subject to the provisions of Section IX.D. which provides in pertinent part:

> To the extent, but only to the extent, that such Claim is caused by the negligence or fault of any member of Company Group, the unairworthiness of any aircraft, . . . or any defect or deficiency in the property or equipment owned, leased operated by any member of the Company Group *(but specifically excluding any aircraft, equipment or property owned leased, under the control of or operated by any member of PHI Group),* Company shall defend, protect, indemnify and hold harmless PHI Group from and against (x) all Claims for personal injury or death suffered by any persons, including any member of Company Group being transported in aircraft operated by PHI . . . where . . . the Claim arises out of, is connected with, incident to, or is resulting from or relating to, the Parties' performance of this Agreement. (Emphasis added).

(Rec. Doc. 133-5, p. 9).

There is no allegation, much less evidence, that Kinetica was negligent or that the aircraft was owned/operated or under the control of any entity other than PHI. Therefore, the indemnity obligations, and consequently subrogation waiver obligations, are not triggered by the clear language of the AFS. Furthermore, since

Kinetica is not indemnifying PHI for its own negligence, the LOAIA is also not triggered.

The parties' intent is further found in the comparable insurance procurement and indemnity provisions and obligations of PHI in Section VII C., which requires: "[t]o the extent of PHI's indemnity of Company Group, . . . PHI shall obtain a waiver of subrogation in favor of Company Group" in its worker's compensation policy. (Rec. Doc. 133-5, p. 7). The extent of PHI's indemnity to Company Group is found in Section IX. It is reciprocal in nature for indemnity claims brought by PHI Group; however, it has a similar, yet distinct, exception in Paragraph C, which provides in pertinent part:

> To the extent, but only to the extent, that such Claim is caused by the negligence or fault of any member of PHI Group, *the unairworthiness of aircraft used by PHI or any defect or deficiency in the property and equipment owned, leased or under the control of any member of PHI Group, PHI shall defend, protect, indemnify and hold harmless Company Group from and against (i) all Claims for personal injury or death suffered by any persons, including any member of Company Group, being transported in aircraft operated by PHI but limited to the period such persons are being transported in aircraft operated by PHI . . ."* (emphasis added).

(Rec. Doc. 133-5, p. 8).

Reading these provisions together, it is clear to this Court that the parties' intent was that Kinetica would not owe indemnity for claims by its employees if they were injured while traveling in an aircraft owned, operated, or under the control of PHI. To the contrary, PHI specifically agreed to indemnify Kinetica for injuries to

Kinetica's employees who were injured while traveling as passengers in an aircraft owned, operated, or under the control of PHI.

"Company Group" as defined in the AFS does not include Kinetica's insurers, such as Zurich. (Rec. Doc. 133-5, at p. 8, ¶IX.A.). Thus, though PHI would owe indemnity to Kinetica as a self-insured entity if it (Kinetica) were paying workers compensation benefits, Zurich is not entitled to that benefit under the AFS.[6] Therefore, Zurich did not get the indemnity benefit afforded by the AFS, but neither was its right of subrogation impaired under this provision.

### C. Relationship of the Indemnity/Insurance provisions in the AFS and the Language of the Zurich Waiver of Subrogation Endorsement.

In further support of this Court's finding of the parties' intent, the Court agrees with Zurich that its waiver of subrogation endorsement does not apply to this scenario, because Kinetica was not "performing work" under the AFS. Zurich's argument calls for an interpretation of the endorsement read together with the AFS. Louisiana policy interpretation precedent is well-established:

> Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." . . . The Louisiana Civil Code provides that "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045 (1987). An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the

---

[6] This is not to suggest that Zurich is not entitled to pursue its subrogation rights by virtue of its policy and §933.

policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. Rev. Stat. Ann. § 22:881 (2009). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." . . .

"An insurer, like other individuals, is entitled to limit its liability" and may alter coverage under its policy through an endorsement as long as the alteration does not "conflict with statutory law or public policy." … Should an insurer and insured attach an endorsement to the policy, "the endorsement becomes part of the contract, and the two must be construed together."

*Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604–05 (5th Cir.2018) (citations omitted).

By its terms, the waiver of subrogation endorsement applies only in favor of "persons and/or organizations that are required by written contract or agreement with the insured, executed prior to the accident or loss, that waiver of subrogation be provided under this policy <u>for work performed by you</u> [Kinetica] for that person and/or organization." (Rec. Doc. 133-5, p. 31) (emphasis added). The endorsement also specifically states: "This agreement applies <u>only to the extent that you</u> <u>[Kinetica] perform work</u> under a written contract that requires you to obtain this agreement from us." (Rec. Doc. 133-5, p. 31) (emphasis added). The specific object and purpose of the AFS was that PHI would provide "flight services to transport personnel and equipment of Company…between landing sites within and without the territorial limits of the United States and offshore thereof." (Rec. Doc. 133-5, p. 3). Therefore, given the Court's previous finding that PHI intended for Kinetica's

indemnity/subrogation waiver obligations to not apply when a Kinetica employee was injured while being transported in a helicopter owned, operated, or under the control of PHI, there must be an interpretation of the two contracts that provides meaning to the "work performed" language of the policy.

The Court finds that the AFS is clear and unambiguous in its requirement that Kinetica procure workers compensation insurance with a waiver of subrogation provision. It is also clear to this Court that PHI contemplated and contracted for different obligations for claims by Kinetica employees when they were injured while traveling as passengers in aircraft owned, operated or under the control of PHI, i.e. being ferried from one location to another as they were in this case. Also clear is the Zurich policy endorsement, which limits the application of its waiver of subrogation endorsement to situations in which Kinetica performs work for PHI pursuant to a written contract. The entire universe of what that work might be is not abundantly clear, but the existence of differing indemnity/insurance procurement obligations suggests differing obligations where the performance of work by Kinetica employees is involved.

For example, if a Kinetica employee was loading (or fueling) a PHI helicopter on an offshore facility, and did so in a manner that caused property damage to Kinetica's equipment or injury to a Kinetica employee, even if PHI was also negligent,     the     Court     could     reasonably     conclude     the     indemnity

obligation/subrogation waiver would be in play, because Kinetica was performing work for PHI in support of its obligation to provide ferrying services for passengers and equipment. Given this interpretation, the Court does not find the AFS obligated Kinetica to "perform work," as the phrase is commonly understood, when its personnel who were allegedly injured were only in the process of being transported as passengers.

The Court finds that the AFS, read in its entirety, is clear and unambiguous when it comes to claims by Kinetica employees who are injured while traveling in an aircraft owned, operated or under the control of PHI. PHI is obligated to indemnify Kinetica (only) for such injuries. Because the facts of this case do not trigger any contractual indemnity obligations by PHI to Zurich or by Kinetica to PHI, no subrogation waiver applies.

### D. <u>Enforceability of waiver of subrogation against non-contracting parties.</u>

Zurich next contends that it is permitted to recover its benefits paid from parties who were not contractually bound to waive subrogation rights, including Bell Helicopter. The AFS is between Kinetica, referred to in the AFS as "Company" and "PHI, Inc." referred to as "PHI." (Rec. Doc. 133-5, p. 3). The insurance and indemnity provisions at issue also refer to "PHI Group," which includes PHI's "subsidiaries, affiliated companies, joint venturers, partners, agents and invitees…" (Rec. Doc. 133-5, p.8, Section IX.B). The Zurich policy provides that Zurich has

"the right to recover [its] payments from anyone liable for an injury covered by this policy." (Rec. Doc. 133-5, p. 31).

Zurich is correct that no evidence has been submitted to suggest that Bell is part of "PHI Group" to which the indemnity and waiver of subrogation provisions could conceivably apply. As Zurich points out, Bell is a wholly owned subsidiary of Textron, Inc. (Rec. Doc. 5). PHI is a publicly traded Louisiana corporation without a parent corporation. (Rec. Doc. 2). The only relation between the two companies is that Bell allegedly manufactured the helicopter that was owned/operated by PHI. Absent any evidence that Bell was included in the AFS between Kinetica and PHI as part of the "PHI Group," Zurich is entitled to pursue its recovery rights for workers compensation/medical benefits paid to or on behalf of Plaintiffs out of any net recovery Plaintiffs from Bell pursuant to 33 U.S.C. §933.

Plaintiffs counter that Bell was a third-party beneficiary to the AFS and is thus entitled to reap the benefits of the waiver of subrogation. The Court is not persuaded.

> "A contracting party may stipulate a benefit for a third person called a third party beneficiary." La. Civ.Code Ann. art. 1978.[2] "Louisiana law is settled that for there to be a stipulation *pour autrui* there must be not only a third-party advantage, but the benefit derived from the contract by the third party may not merely be incidental to the contract." *Davis Oil Co. v. TS, Inc.,* 145 F.3d 305, 311 (5th Cir.1998) (citation omitted). Further, the stipulation "will be found only when the contract *clearly* contemplates the benefit to the third person as its condition or consideration." *Id.* (citation omitted). The contract need not expressly identify the third person, however, if the contract plainly contemplates a benefit to a third person.

*Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 375 (5th Cir.2003).

First, the Zurich policy specifically states: "This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule." (Rec. Doc. 133-4, p. 31). There is no construction of the Schedule that could be interpreted to include Bell. Second, there is nothing in the AFS that indicates either Kinetica or PHI intended that the helicopter manufacturer, Bell, would derive any benefit. To the contrary, the entities identified as "PHI Group" do not include any entity that could be construed to include Bell. Therefore, Bell (which did not join or oppose Plaintiffs' Motion for Summary Judgment) does not qualify as a third-party beneficiary of the AFS. Zurich is entitled to pursue subrogation against Bell.

### E. **Zurich's entitlement to set off for future payments.**

Finally, Zurich correctly argues that it is entitled to an offset out of any net recovery by the plaintiffs for future benefits paid to or on behalf of Plaintiffs. Zurich's position is legally supported by 33 U.S.C. §933(f).  See also *Petroleum Helicopters, Inc. v. Collier*, 784 F.2d 644, 646 (5th Cir. 1986).


### Conclusion

For the reasons discussed herein, Plaintiffs' Motion for Summary Judgment is DENIED.

THUS DONE in Chambers, Lafayette, Louisiana on this 17th day of September, 2019.

_____
PATRICK J. HANNA